# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS EDWARD COOKE, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:13CV01702 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Movant Louis Edward Cooke's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1]. In conjunction with this Motion, the Court considers Movant's First Supplemental Motion [ECF No. 7], Second Supplemental Motion [ECF No. 9], and Reply Memorandum [ECF No. 19].

## I. BACKGROUND

In June 2010, Federal Bureau of Investigation (FBI) agents and Kirkwood Police officers were conducting an ongoing investigation into sex trafficking of children. The investigative team was led by FBI Special Agent (SA) Cindy Dockery, and Kirkwood Police Detective Robert Bayes. In the course of their investigation, agents obtained a vacant house, wired for video and audio recording, which they used as an undercover sex trafficking establishment. Agents also established an undercover backpage.com[1] account and Yahoo! email account. They placed an

---

[1] Backpage.com commonly contains disguised advertisements for prostitution services.

advertisement in the adult services section of backpage.com, which contained the caption "Young and Irresistible." Criminal Docket (CD)[2] ECF No. 107 at 22:24.

On June 10, 2010, Detective Bayes, playing the undercover role of a pimp, received a response to the backpage.com advertisement from an email address styled "louiscookeusa@yahoo.com." At trial, the parties stipulated this email address was registered to Movant. In his response, Movant requested "info please and pics." CD ECF No. 107 at 35:25. Agents responded to the email by sending digitally morphed photographs depicting an underage female; they quoted prices for half-hour and hour sessions with her. Movant responded, "Ok, I would like to set something up!!" which was followed by a series of emails between Movant and the undercover agents. CD ECF No. 107 at 37:24-25. Many of these emails were initiated by Movant. During the email exchange, agents identified two available females, "Katie" and "Sabrina," ages 13 and 15, respectively. Ultimately, Movant settled on "Sabrina."

After choosing "Sabrina," Movant initiated a series of telephone calls to the undercover telephone number. He attempted to negotiate for reduced rates. During the first call, Detective Bayes, acting undercover as the girls' pimp, told Movant his car would not start, and asked him to bring jumper cables. At trial, Detective Bayes testified he mentioned the jumper cables so Movant would think he was a "normal person." CD ECF No. 107 at 117:1-12. Later, during the second call, Movant and Detective Bayes agreed on a 60-dollar rate for a 15-minute session. Additionally, Movant asked to speak with "Sabrina." FBI SA Hannah Mayer played the role of "Sabrina" on the telephone and briefly spoke with Movant, who asked "Sabrina" whether she "was as cute as [her] picture." CD ECF No. 108 at 107:9. During the third call, the only call not initiated by Movant, agents asked Movant to confirm whether he planned to follow through with

---

[2] The underlying criminal case has an ECF Number of 4:10CR00328 ERW.

the arrangement. During the fourth call, agents provided Movant directions to a gas station close to the undercover house. Finally, during the fifth call, which transpired at 11:12 p.m., agents provided Movant directions from the gas station to the undercover house.

Shortly after the final telephone call, Movant arrived at the undercover house and was greeted by Detective Bayes. At trial, a video showed, and Detective Bayes testified, upon entering the house, Movant removed his wallet from his pants pocket, and returned it to his pocket soon thereafter. *See* CD ECF No. 107 at 128:7-129:2. After a brief conversation, Detective Bayes announced he was a police officer, and agents arrested Movant.

SA Loren Miller searched Movant, and seized 61 dollars in cash from Movant's wallet. SA Dockery further testified she and SA Miller escorted Movant to the kitchen, where Movant asked, "Is my life over?" CD ECF No. 107 at 68:1-2. SA Dockery then furnished an Advice of Rights Form and read Movant his *Miranda* rights. CD ECF No. 107 at 68:3-69:5. Movant then waived his *Miranda* rights by signing a Waiver of Rights Form.

At trial, SA Miller testified about the statements Movant made after waiving his rights. Specifically, SA Miller testified Movant admitted to responding to the backpage.com advertisement, and acknowledged he wrote the emails received by Detective Bayes. Movant said he frequented houses of prostitution approximately once per month, typically negotiating the price between 30 and 60 dollars per visit. On this occasion, Movant stated he came to the house to see the 15-year-old "Sabrina," because he believed she looked older than he was told. Additionally, Movant admitted he asked to speak to "Sabrina." He said he told her she was "very pretty and that he was going to take care of her[.]" CD ECF No. 108 at 84:17-19. Movant stated "Sabrina" sounded as if she was 19, 20 or 21 years old. SA Miller testified he and SA Dockery continued to ask Movant why he was at the undercover house, to which Movant said,

"Well let me ask you a question. Is . . . prostitution a federal crime?" CD ECF No. 108 at 87:6-7. When agents answered "no," Movant said, "Well, then that's why I'm here. I'm here to get laid by a legal person. I'm here to see a new girl." CD ECF No. 108 at 87:8-10.

Thereafter, agents executed search warrants on Movant's email account. They recovered numerous email communications in which Movant requested to meet prostitutes. In one particular email strand from April 2009, Movant attempted to set up a meeting with an individual known as "A. Roland," who purported to be 16 years old. This "A. Roland" strand of emails was admitted[3] at trial pursuant to Federal Rule of Evidence (FRE) 404(b).[4]

The Government charged Movant with attempted sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) (Count I), and attempting to entice a minor to engage in an illegal sex act in violation of 18 U.S.C. § 2422(b) (Count II). A jury trial ensued. At trial, Movant testified in his own defense. He admitted he commonly contacted pimps and prostitutes on websites like backpage.com. He said he "pulled the chain" of these individuals as a form of "entertainment." CD ECF No. 110 at 26:13-27:14. Movant testified he was simply "joking around" with the undercover agents in the instant case. CD ECF No. 110 at 35:2-14.

---

[3] The Court read a limiting instruction to the jury before this evidence was presented. CD ECF No. 108 at 125:7-126:5; CD ECF No. 109 at 8:20-9:16.

[4] FRE 404(b) reads as follows:

> **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> **(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
> > **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> > **(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

At the close of evidence, the Court held a jury instruction conference, during which Movant requested an entrapment instruction. The Government opposed, and after argument, the Court denied the requested instruction.[5] On November 17, 2010, the jury found Movant guilty of both Counts. The Court subsequently sentenced Movant to 120 months of imprisonment on both Counts, to be served concurrently. On direct appeal, the Eighth Circuit affirmed the convictions. *See generally U.S. v. Cooke*, 675 F.3d 1153 (8th Cir. 2012).

## II. LEGAL STANDARD

A federal prisoner who seeks relief from a sentence on grounds "that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under § 2255, the movant must establish a violation constituting "a fundamental defect which inherently results in the miscarriage of justice." *U.S. v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *U.S. v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). "Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on [§ 2255]," and the Eighth Circuit has only deviated from that general rule in cases involving convincing new evidence of actual innocence or similarly extraordinary circumstances. *See U.S. v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

Claims brought under § 2255 may also be limited by procedural default. A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. U.S.*, 25 F.3d 704, 706 (8th Cir.

---

[5] The Eighth Circuit affirmed this denial on Movant's direct appeal. *U.S. v. Cooke*, 675 F.3d 1153, 1155-56 (8th Cir. 2012).

1994) (citing *Bedford v. U.S.*, 975 F.2d 301, 313 (7th Cir. 1992)). Claims, including those concerning constitutional or jurisdictional issues, unraised on direct appeal cannot be subsequently raised in a § 2255 motion unless the movant can establish "(1) cause for the default and actual prejudice or (2) actual innocence." *U.S. v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. U.S.*, 523 U.S. 614, 621 (1998)).

If a movant is not procedurally barred from bringing a § 2255 motion, the Court must hold an evidentiary hearing to consider claims made therein "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. U.S.,* 24 F.3d 1040, 1043 (8th Cir. 1994). Thus, a movant is entitled to an evidentiary hearing as long as "the facts alleged, if true, would entitle [the movant] to relief." *Payne v. U.S.,* 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). A court may dismiss a claim without an evidentiary hearing, in contrast, "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. U.S.*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

## III. DISCUSSION

Movant asserts multiple grounds for relief, several of which he first casts as a substantive flaw with his trial proceedings, before couching the same flaw in terms of ineffective assistance of counsel.[6] At the outset, the Court notes Movant's substantive claims are procedurally defaulted. In particular, he argues SA Miller perjured himself by testifying he had never met Movant before the undercover operation; in contrast, Movant contends SA Miller purchased

---

[6] For example, Movant argues his conviction should be set aside because SA Miller committed perjury, and he then asserts trial counsel were ineffective for failing to alert the Court to this purported perjury.

shoes from the shoe store where Movant was employed.[7] Aside from alleging perjury, Movant claims SA Miller used this purported knowledge to induce Movant to waive his *Miranda* rights, and promised Movant he would not be charged if he waived his rights.[8] Additionally, Movant claims the Government committed a *Brady* violation, and engaged in prosecutorial misconduct, by disclosing one surveillance video before trial, but playing an enhanced version at trial.[9] Similarly, he asserts the Government engaged in prosecutorial misconduct by falsifying the date of an email during the proffer of FRE 404(b) materials.[10] Collectively, these allegations have been procedurally defaulted, because each could have been raised on direct appeal, but were not.

---

[7] Even if this claim was not procedurally improper, it lacks merit, because Movant has failed to adequately allege both "the use of perjured testimony, and . . . knowledge by the prosecuting officials at the time the testimony was used that it was perjured." *Holt v. U.S.*, 303 F.2d 791, 794 (8th Cir. 1962).

[8] Nothing in the record, aside from Movant's own self-serving affidavit, supports these contentions. "Statements that are self-serving and unsupported by the evidence do not establish a basis for relief under section 2255." *Reid v. U.S.*, No. 4:10CV583 CAS, 2010 WL 3829397, at *3 (E.D. Mo. Sept. 23, 2010) (citing *U.S. v. Apfel*, 97 F.3d 1074, 1077 (8th Cir. 1996)).

[9] Even if not barred procedurally, these claims would fail on the merits. First, *Brady* violation claims require a finding that (1) the evidence was favorable to the defendant, (2) the government suppressed the evidence, and (3) the evidence was material to guilt. *See U.S. v. Barraza Cazares*, 465 F.3d 327, 333 (8th Cir. 2006). Here, Movant claims the enhanced video was harmful, not favorable, to him, and the Government did not suppress the video, but played it at trial.

Second, prosecutorial misconduct requires evidence "that (1) the prosecutor's remarks or conduct were improper; and (2) the conduct affected the defendant's substantial rights so as to deprive him of a fair trial." *U.S. v. Fenner*, 600 F.3d 1014, 1022 (8th Cir. 2010). Notably, the contents of the video were also established by the independent testimony of Detective Bayes. Given the wealth of incriminating evidence produced at trial, Movant has failed to show the "cumulative effect" of the purported misconduct prevented him from obtaining a fair trial. *See U.S. v. LaFuente*, 991 F.2d 1406, 1411 (8th Cir. 1993).

[10] This allegation is affirmatively refuted by the record. In their affidavits, trial counsel state,

> We read the government's 404(b) motion and saw that they alleged the defendant was on the internet three days after his arrest when he was in the Lincoln county Jail. We brought this issue to the government's attention and after the government realized their mistake the issue was not presented to the jury at trial.

ECF Nos. 14-1 at ¶ 4, 14-2 at ¶ 4.

*Anderson*, 25 F.3d at 706.  Movant has not attempted to establish cause for default or prejudice. *Moss*, 252 F.3d at 1001.  Accordingly, these arguments provide no basis for relief.

Additionally, Movant raises one ground for relief that was partially raised on direct appeal.  That is, Movant claims the emails admitted at trial under FRE 404(b) constituted hearsay.  As to one of the "A. Roland" emails, this argument was raised on direct appeal and denied by the Eighth Circuit, which explained the email was not hearsay, because "A. Roland's" statement was offered only for context, and Movant's response was an admission.  *Cooke*, 675 F.3d at 1156-57.  Regarding the remaining FRE 404(b) evidence, Movant could have raised these emails on direct appeal, but did not.  They are, therefore, procedurally defaulted, and Movant's substantive claims for relief have been procedurally defaulted.

Because Movant's substantive claims for relief have been procedurally defaulted, the Court will limit the remainder of its analysis to his ineffective assistance of counsel claims.  In *Strickland v. Washington*, the Supreme Court held a showing of ineffective assistance of counsel requires a movant to demonstrate: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) "counsel's deficient performance prejudiced the defense."  466 U.S. 668, 687 (1984).  To prove the first prong, a movant must demonstrate "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  Even if sufficient proof of the first prong exists, relief may only be obtained if a movant also proves counsel's deficient performance prejudiced the case. *Id*. at 697.

To show prejudice, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court may address the two *Strickland* prongs in any order, and, if the petitioner fails to make a sufficient showing on one prong, the Court need not address the other prong. *See id.* at 697; *Fields v. U.S.*, 201 F.3d 1025, 1027 (8th Cir. 2000) ("If we can answer 'no' to either question, then we need not address the other part of the test."). In his Motion, Movant raises multiple claims of ineffective assistance. For reasons stated *infra*, the Court concludes Movant has failed to meet his burden, and his Motion will be denied without an evidentiary hearing.

### A. *Perjury and* **Miranda** *Waiver*

Movant argues trial counsel were ineffective for failing to alert the Court to SA Miller's alleged perjury and *Miranda* violation. Specifically, Movant contends, prior to his arrest, he met SA Miller at Movant's place of employment, a shoe store. Movant claims he sold a pair of shoes to SA Miller on this occasion. Movant asserts SA Miller used this information to induce Movant into waiving his *Miranda* rights, and promised Movant he would not be charged if he waived his rights. At a suppression hearing held August 9, 2010, SA Miller testified he and Movant had never previously met and he had purchased his shoes elsewhere. Movant argues (1) trial counsel were ineffective for failing to alert the Court to SA Miller's alleged perjury at the suppression hearing, and (2) trial counsel were ineffective for failing to argue he was induced into waiving his *Miranda* rights.

Movant has failed to satisfy either prong of the *Strickland* test. Movant's allegations of deficient performance rest solely on his own self-serving affidavit, which is insufficient to provide a basis for relief in a § 2255 case. *See U.S. v. Apfel*, 97 F.3d 1074, 1076–77 (8th Cir. 1996). There is no evidence in the record suggesting either Movant and SA Miller previously

met, or SA Miller made improper promises to induce Movant to waive his rights. Additionally, trial counsels' affidavits make clear they made strategic decisions not to pursue Movant's allegations, which, after interviewing SA Miller, they found irrelevant, collateral, and unsupported. *See* ECF Nos. 14-1 at ¶ 1, 14-2 at ¶ 1. Matters of trial strategy are generally entrusted to the "professional direction of counsel." *Morelos v. U.S.*, 709 F.3d 1246, 1250 (8th Cir. 2013) (quoting *U.S. v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011)). In any event, Movant has unquestionably failed to satisfy the prejudice prong. Given the "overwhelming" evidence of Movant's guilt, *Williams v. U.S.*, 452 F.3d 1009, 1013 (8th Cir. 2006), the Court cannot conclude these collateral allegations, even accepted as true, create a "reasonable probability" that the outcome of Movant's trial would have been different. *Strickland*, 466 U.S. at 694. Movant's first ground for relief is denied.

### B. *Plea Bargaining and the Decision for Trial*

Next, Movant claims trial counsel were ineffective for failing to procure a "good and fair" plea agreement. ECF No. 1-1 at 7. Movant asserts trial counsel were ineffective for advising him to reject an initial plea bargain, promising he would receive a better offer, and subsequently failing to secure a second offer. Additionally, Movant argues a conflict of interest violated his Sixth Amendment rights, because trial counsel were motivated by their financial interest in proceeding to trial. In support of his arguments, Movant offers the sworn statements of his adoptive aunt, Mary McDonnell, who alleges trial counsel's only interests were pursuing trial and securing the associated fees. *See* ECF No. 19-1 at ¶ 4.

The right to effective assistance of counsel extends to plea negotiations. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In reviewing such matters, the two-part *Strickland* test applies to ineffective assistance of counsel claims arising out of the plea bargaining process. *Id.* at 58.

To prevail here, Movant must show "the outcome of the plea process would have been different with competent advice." *Laffler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Where, as here, the movant alleges incompetent advice led to an offer's rejection,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Movant has failed to meet his burden. Notably, he admits he was offered, and rejected, an offer to plead to charges carrying a 72-month sentence. *See* ECF No. 1-1 at 7. In fact, he acknowledges he rejected the offer due to the small difference between the 72-month sentence offered, and the ten-year-sentence he would face at trial. *Id.* This demonstrates he made an informed decision based on logic, not on incompetent advice or coercion by his attorneys. Moreover, Movant admits he maintained his innocence from "day one" of hiring trial counsel. ECF No. 1-1 at 7. "A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders v. U.S.*, 341 F.3d 720, 723 (8th Cir. 2003). Movant was "adamant" about his innocence throughout his proceedings. ECF Nos. 14-1 at ¶ 2, 14-2 at ¶ 2. Dated August 2010, a letter from counsel to Movant states,

> As we have discussed in my office, the Assistant United States Attorney has indicated that if you wish to plead guilty and avoid a trial, they will dismiss that charge and charge you with two counts of 'using a facility in interstate commerce with the intent to commit commercial sex trafficking' in violation of Title 18, United States Code, Section 1952. This statute carries a maximum of not more than five years imprisonment. However, since there would be two counts, the

sentence under a plea agreement would be six years imprisonment. It is my understanding that you wish to proceed to trial in this matter on October 4th. If this is not correct, please let me know immediately.

ECF No. 14-3 at 1. In addition, at trial, Movant testified to his innocence in his own defense. Thus, the Court concludes Movant's allegations are refuted by the record.

Nor is the Court persuaded that trial counsel's professional judgment was clouded by financial concerns. "Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *U.S. v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (quoting *U.S. v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997)). Movant offers only conjecture that trial counsels' advice was motivated by pecuniary gain.[11] Movant's second ground for relief is denied.

### C. Trial Counsel's Failure to Object to the Videotape Evidence

Movant alleges trial counsel were ineffective for failing to object to the videotape evidence at trial. Specifically, Movant contends the video offered at trial was different than the footage the Government previously disclosed. Movant maintains, in the footage he was shown, the viewer could not see him remove a wallet from his pants pocket, which was clearly visible on the footage shown at trial.

---

[11] In her affidavit, Mary McDonnell alleges trial counsels' sole focus was a 25,000-dollar retainer. She further alleges counsel "subsequently without any justification" demanded an additional 25,000 dollars "in breach of the terms which had been agreed to by the parties at the beginning of the case[.]" ECF No. 19-1 at ¶ 4. Dated August 2010, a letter from trial counsel to Movant states, "In our last meeting, I presented you with a fee agreement that provides for an additional $25,000 fee for trial. If that is agreeable, please return a signed copy of the agreement to our office." ECF No. 14-3. The Court is persuaded neither by Mary McDonnell's conclusory allegations of breach the fee agreement, nor by her speculative assertions that Movant's trial was affected by a conflict of interest. In sum, the Court finds Movant's conflict of interest assertion is "contradicted by the record" and "inherently incredible." *Tinajero-Ortiz v. U.S.*, 635 F.3d 1100, 1105 (8th Cir. 2011)

Movant has failed to show trial counsel were ineffective for failing to object. In their affidavits, trial counsel state, "To the best of my recollection the video we watched at trial was the same one we watched at the United States Attorney's Office." ECF Nos. 14-1 at ¶ 3, 14-2 at ¶ 3. Because trial counsel believed the videotapes to be the same, they lacked grounds to object. In any event, Movant has failed to show prejudice, as what was shown on the videotape was established by the independent testimony of Detective Bayes. Additionally, Movant's wallet contained 61 dollars in cash: one dollar in excessive of the agreed-upon price for a session with "Sabrina." In other words, the evidence at trial made clear Movant intended to follow through with the arrangement, even without the videotape evidence. Therefore, Movant has failed to establish a reasonable probability of a different outcome. Movant's third claim is denied.

### D. Counsel's Failure to Object to 404(b) Evidence

Movant asserts trial counsel were ineffective for failing to object to the FRE 404(b) evidence as hearsay. The Court disagrees. On direct appeal, Movant argued one of the "A. Roland" emails was hearsay and inadmissible. *Cooke*, 675 F.3d at 1156. The Eighth Circuit disagreed, finding the email was offered for context, not for the truth of the matter asserted. *Id.* at 1156-57. The court also noted Movant's response was an admission, and therefore not hearsay. *Id.* at 1156. Movant has failed show how the remaining 404(b) emails were any less admissible than the "A. Roland" email addressed by the Eighth Circuit.

Additionally, trial counsel argued against the admissibility of all the FRE 404(b) emails in an extensive pretrial conference. Trial counsel argued these emails were unduly prejudicial, but the Court disagreed. Trial counsel duly renewed their objection at trial. Therefore, trial counsel did not act deficiently in regards to the evidence admitted under FRE 404(b). Movant's fourth claim for relief is denied.

### E. Stipulated Facts

Movant argues trial counsel were ineffective for recommending he stipulate certain facts regarding his case.[12] The Court does not agree. The decision to stipulate was made as part of a reasonable trial strategy, focusing on an entrapment defense. Here, the stipulations were irrelevant to the entrapment defense, and therefore it was well within the afforded protection of trial strategy to stipulate to the facts. *See, e.g.*, *U.S. v. Lemon*, 335 F.3d 1095, 1096 (8th Cir. 2003) (where defendant was charged with possession of cocaine base, counsel was not ineffective for stipulating to the type of drug, when trial strategy focused on disproving element of possession). "Experienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case." *U.S. v. Gaskin*, 364 F.3d 438, 469 (2d Cir. 2004). As a result of this decision, trial counsel were not ineffective for stipulating to certain facts irrelevant to entrapment.

### F. Remaining Claims

Finally, Movant raises an assortment of other claims, which are generalized and mostly frivolous, and do not allege prejudice with any specificity. For example, Movant alleges motions filed by trial counsel were too short and weak, but does not state what else they could have contained to make them adequate. Similarly, Movant claims trial counsel were ineffective for

---

[12] The parties entered into stipulations regarding the authenticity of emails sent by and received by Movant; the video footage of the arrest and the events leading up to it; the voice recordings of telephone calls between undercover agents and Movant; the screenshots of certain backpage.com websites; certain relevant business records of T-Mobile, AT&T, and Clark's England Shoes; and Movant's knowing use of the internet and a cellular phone, each of which is an interstate facility that was in, or was affecting, interstate commerce to communicate with undercover agents. *See* CD ECF No. 106 at 119:15–125:23.

failing to call three witnesses.[13] Movant has failed to provide any concrete evidence of how these witnesses would testify, or otherwise change the outcome of his case.[14] In any event, trial counsel's affidavits make clear they made strategic decisions not to call these witnesses, *see* ECF No. 14-4; "[d]ecisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second guessed by hindsight." *Fretwell v. Norris*, 133 F.3d 621, 627 (8th Cir. 1998) (internal quotations omitted).

Additionally, Movant contends one of the prosecutors discussed this case with his colleague, who happens to be a cousin of Movant. Movant argues this created a conflict of interest. The Government contends Movant's cousin was not involved in this case at all, and Movant's claims are mere speculation. The Court agrees. Movant has failed to present any evidence as to what extent his cousin was allegedly involved with the case, or how Movant was potentially prejudiced from receiving a fair trial.

Movant's remaining claims are equally unsupported and lack merit. Movant's Motion is, therefore, denied.

## IV. RIGHT TO EVIDENTIARY HEARING

In sum, the Court concludes Movant's "allegations, accepted as true, would not entitle [him] to relief[.]" *Tinajero-Ortiz v. U.S.*, 635 F.3d 1100, 1105 (8th Cir. 2011). Additionally, many of his allegations in his self-serving affidavit are either entirely unsupported, "contradicted by the record," or "inherently incredible." *Id*. In particular, review of the record establishes without a doubt Movant was assisted effectively by counsel and received a reasonable defense

---

[13] Specifically, Movant claims trial counsel should have called (1) a representative from backpage.com, (2) Movant's friend Taran Jaspal, and (3) Movant's retained computer forensic expert.

[14] In his Reply, Movant submitted two emails from the computer forensic expert. These emails do not change the Court's conclusions.

focused on entrapment. As Movant has failed to sufficiently allege entitlement to habeas relief, an evidentiary hearing is not required.

## V. CERTIFICATE OF APPEALABILITY

The Court finds Movant has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims in Movant's Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Louis Edward Cooke's Motion under 28 U.S.C § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1] is **DENIED**.

Dated this  21st  Day of May, 2014.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE